GUILLERMO ESTEVES, Petitioner and Appellant, *v*. RETIREMENT BOARD, ETC., Respondent and Appellee.

No. 8271. Argued February 10, 1942.—Decided March 10, 1942.

*Celestino Iriarte, F. Fernández Cuyar,* and *H. González Blanes* for appellant. *George A. Malcolm, Attorney General* and *G. Benítez Gautier, Deputy Attorney General* for appellees.

Mr. Justice Snyder delivered the opinion of the court.

Guillermo Esteves, having been employed by the Insular Government for more than 20 years, applied for retirement. His application was granted, effective June 3, 1932, and he received his retirement pay of $125 per month from that date to July 15, 1935.

In 1935 the Legislature passed Act No. 23. Section 11 of that Act provides in part that "from pensioners who are now fifty years old or less, a deduction of 20 per cent shall be made; from those of over fifty years, such deduction shall be reduced at the rate of one per cent for each year of age over fifty, so that from those seventy years of age, such deduction will be reduced to zero . . .". In 1935 Esteves was less than 50 years of age. Consequently, from July 15 to September 12, 1935 he received his retirement pay less a 20 per cent deduction. These deductions amounted to $45.

Section 19 of Act No. 23 provides in part that "Every pensioner shall cease to receive his annuity during such time as he may be holding any position with salary . . . from any governmental source, whether Federal, Insular, or municipal . . .". From September 13, 1935, to date Esteves has been employed by the Federal Government. Since September 13, 1935, he has therefore received no retirement pay.

This is a petition for mandamus to compel the appellees to make all back payments totalling $4,502.98, and to continue the retirement pay of $125 a month of appellant in the future. The case was tried on a stipulation of facts. The lower court denied the petition, and the case is here on appeal.

In *Fernández* v. *MacLeod*, 52 P.R.R. 867, this court held that § 11 of Act No. 23 was invalid. We held that to reduce under its terms the retirement pay of a former insular employee who had been previously granted retirement at a stated rate of retirement pay deprived him of a vested right in violation of § 2 of the Organic Act providing

that "no law shall be enacted in Porto Rico which shall deprive any person of life, liberty, or property without due process of law . . . ". The Circuit Court of Appeals reversed that judgment in *MacLeod* v. *Fernández*, 101 F. (2d) 20. The Circuit Court of Appeals presumably also found that § 11 did not violate § 2 of Organic Act providing that "No law impairing the obligation of contracts shall be enacted."

While § 19 of Act No. 23 was not involved in the *Fernández* case, no contention has been made here that § 19 stands on a different basis than § 11. We take it that if the Legislature may validly reduce retirement pay of a former employee who has already been retired, it may provide for suspension of such retirement pay during subsequent Federal employment. At any rate, as the case has been argued before us, the same considerations of vested rights and impairment of the obligation of contracts require §§ 11 and 19 to stand or fall together.

The appellant does not distinguish the *Fernández* case. His position is that we correctly decided the *Fernández* case and that the Circuit Court of Appeals erred in reversing our judgment. Such an argument should ordinarily be addressed to the Circuit Court of Appeals rather than to us. However, appellant points out that in the *Fernández* case the attention of the Circuit Court of Appeals was not called to certain features of our statute which, the appellant contends, would have lead the Circuit Court of Appeals to a different result if that court had considered them.

█ In the *Fernández* case the Circuit Court of Appeals holds that if contributions by Government employees to a retirement fund are compulsory, these contributions continue to be public funds to which the contributing employees have no vested rights; and as a consequence, even though an employee has been retired at a stated annuity pursuant to existing law, his retirement pay can subsequently be reduced or otherwise modified by the Legislature. There is a *dictum*

that "in case of a voluntary contribution, the contribution becomes the property of the employee or official and to that extent, at least, he may acquire a vested right in the fund." (101 F. (2d) 20, 25).

■ The appellant makes no contention that insular employees are not required to make compulsory contributions to the retirement fund. However, he does contend that he nevertheless has a vested right in the annuity granted to him in 1932 on the ground that when he retired he had an option to obtain reimbursement, with interest, of all the payments he had made to the retirement fund while he was an insular employee. He argues that when he retired and chose to receive an annuity for life rather than to claim the return, with interest, of all his payments to the fund, his right to the annuity for life became vested and was not subject to any modification or reduction by future legislation. *Retirement Board of Allegheny County* v. *McGovern*, 174 Atl. 400 (Pa.—1934), is cited in support of this position. We are not satisfied that the Pennsylvania court rested its holding exclusively on this feature of the Pennsylvania statute. The *McGovern* case seems to have been decided primarily on the basis of a vested or contractual right of a retired employee to his retirement pay. The court apparently uses the reimbursement provision only as one of the grounds for its decision. However, we recognize that the *McGovern* case does distinguish the cases in which retired employees were denied vested rights in their retirement pay in its statement at p. 408 that "Such cases, however, involve statutes which do not give a right to the member to withdraw the amounts deducted from his salary because no part of the contributor's money is in the fund, but only public moneys . . . ".

Whether the reimbursement features of our statute, which were not considered by the Circuit Court of Appeals in the *Fernández* case, would lead that court to a different result is for it to decide. We confine ourselves to pointing out that

we are unable to agree entirely with the premise on which the appellant bases his argument.

Act No. 104, Laws of Puerto Rico of 1925, provided in § 12 that "In case an officer or employee . . . finally ceases in the service before retirement, the total amount of assessments deducted from his salaries or compensation, with interest at the rate of 3 per cent a year . . . shall be returned to said officer or employee upon application. . . . When an officer or employee dies while in active service the total sum of assessment deducted, plus interest . . . shall be paid to the lawful heirs of said officer or employee . . .". In this respect § 12 amended the provisions of Act No. 22, Laws of Puerto Rico, Special Session, 1923, reading as follows:

"Section 12.—In case an employee or official . . . is separated from the service before he acquires the right to retirement, fifty (50) per cent of the total sum of the deductions from his salary . . . shall be returned to him if he so requests. . .

"Section 13.—In case an employee dies before acquiring the right to retirement pursuant to this Act, he shall be entitled to a refund of seventy-five per cent of the total of his deductions, which amount shall be turned over to his heirs."

These sections would seem to indicate that the right of reimbursement was confined to a situation where the privilege of retirement did not exist. While conceivably an employee might, if he chose, ask for reimbursement of his payments to the retirement fund immediately before he became eligible for retirement, strictly speaking, the statute did not give appellant *at retirement* an option as such (*a*) to obtain a lump sum or (*b*) to receive an annuity for life. Once having become eligible for retirement and having requested retirement, he was entitled by the law as it then existed only to receive an annuity based on compulsory contributions. Although the practical result may be similar, the analogy to the situation in the *McGovern* case is therefore not complete.

■ It may also be contended that § § 19 and 11 of Act No. 23 of 1935 represent a reasonable exercise of the state's power to place the retirement fund on a sound actuarial basis. These sections do not terminate the retirement pay of the appellant. Section 19 only broadens the existing suspension of retirement pay in the event of subsequent insular employment to include similar Federal employment (see § 20, Act No. 104 of 1925). And § 11 is in substance an age requirement, with the 20 per cent deduction being gradually restored between the ages of 50 and 70.

In any event, in view of *MacLeod* v. *Fernández, supra,* we are constrained to hold that § § 11 and 19 of Act No. 23 of 1935 are valid as applied to the appellant.

The judgment of the district court will be affirmed.